UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| HERMAN T. DOVE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 03-2156 (RMU) |
| | : | | |
| v. | : | Document No.: | 32 |
| | : | | |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | : : | | |
| | : | | |
| Defendant. | : | | |

MEMORANDUM OPINION

GRANTING THE DEFENDANT WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

This matter comes before the court on the defendant Washington Metropolitan Area Transit Authority's ("WMATA") motion for summary judgment.  The plaintiff brings the instant suit against WMATA, his former employer, for alleged unlawful termination, defamation/libel, unfair labor practices and conspiracy.  Because the plaintiff's claims for unlawful termination, defamation/libel, and unfair labor practices are time-barred, the court grants the defendant's motion for summary judgment as to those claims.  Because the plaintiff's claim of conspiracy is not an independent cause of action, the court grants summary judgment as to that claim.

## II.   BACKGROUND

The plaintiff was employed by the defendant WMATA beginning in 1973.  Mem. Op. (Mar. 30, 2004) ("Mem. Op.") at 1.  After the plaintiff received three suspensions in 1995, and as a result of numerous alleged customer complaints filed against him, WMATA terminated the

plaintiff's employment on June 3, 1997. Mem. Op. at 2 (citing *Dove v. Wash. Metro. Area Transit Auth.*, 1999 U.S. Dist. LEXIS 12443, at *2 (D.D.C. Aug. 5, 1999) (Hogan, J.)). The plaintiff subsequently brought suit against WMATA claiming discrimination on the basis of his race, sex, and age. *Id*. (citing *Dove*, 1999 U.S. Dist. LEXIS 12443, at *1). That court granted WMATA's motion for summary judgment after determining that the plaintiff "was not performing at or near WMATA's legitimate expectations." *Id*. (quoting *Dove*, 1999 U.S. Dist. LEXIS 12443, at *5). The D.C. Circuit affirmed this finding. *Dove v. Wash. Metro. Area Transit Auth.*, 2000 U.S. App. LEXIS 4064 (D.C. Cir. Feb. 2, 2000).

After the plaintiff was discharged in June 1997, WMATA and the union representing the plaintiff, Amalgamated Transit Union ("Local 689" or the "Union"), negotiated a settlement whereby the plaintiff's employment was reinstated on September 10, 1997. *Id.* A condition of the plaintiff's reinstatement was that his employment would be terminated if another complaint was filed against him. Def. WMATA's Mot. for Summ. J. ("Def.'s Mot."), Ex. C at 2.

On April 18, 2002, a customer filed a complaint against the plaintiff. *See* Def.'s Mot., Ex. H at 1. As a result, the plaintiff's employment relationship with WMATA was terminated by June 1, 2002. *Id.*, Ex. A ("Pl.'s Depo.") at 58-59; *see also* Mem. Op. at 2. The exact order in which the events took place between April 18, 2002 and June 1, 2002 is unclear. The plaintiff testified that he heard informally that his employment would be terminated as a result of the April 18 complaint. Pl.'s Depo. at 37-39. Sometime between April 18, 2002 and May 2, 2002, he requested information from WMATA regarding retirement benefits. *Id.* at 45-46. In a letter dated May 8, 2002, Billy Brown, the Superintendent of WMATA, informed the plaintiff that he was terminated from WMATA, effective immediately. Def.'s Mot., Ex. H; *see also* Mem. Op. at

2. The plaintiff then filed a grievance with the Union on May 10, 2002, complaining of, *inter alia*, his alleged "forced retirement." Pl.'s Opp'n, Ex. B. On May 14, 2002, the plaintiff signed an "Application for Retirement" indicating that the plaintiff's retirement was to become effective on June 1, 2002. Def.'s Mot., Ex. I. In a letter dated May 31, 2002, a union official notified the plaintiff that Brown intended not to "honor the grievance process" and refused to "sign off on [the plaintiff's May 10] grievance" until the plaintiff retired. Pl.'s Opp'n, Ex. A. The plaintiff has been retired and receiving retirement benefits since June 1, 2002. Pl.'s Depo. at 58-59.

On September 15, 2003, the plaintiff filed the instant action in the Superior Court for the District of Columbia. Mem. Op. at 2. Because the United States District Courts enjoy original jurisdiction over all claims against WMATA, WMATA removed the action to this court. *Id.*; *see also* D.C. Official Code § 9-1107.01(81). The plaintiff subsequently amended his complaint on July 27, 2004, to modify his claims and to add the Union as a defendant. Specifically, the plaintiff's amended complaint alleges (1) wrongful termination, defamation/libel, unfair labor practices, and conspiracy against WMATA, and (2) conspiracy, breach of contract, and false representation by Local 689. *See generally* Am. Compl.

On December 23, 2004, the plaintiff and the Union filed a Stipulation of Dismissal whereby the plaintiff voluntarily dismissed with prejudice all of his claims against the Union. Stipulation of Dismissal with Prejudice at 1. The remaining defendant, WMATA, filed a motion for summary judgment on January 10, 2005. The court now turns to that motion.

### III.   ANALYSIS

#### A.   Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150,


154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. The Court Grants the Defendant's Motion for Summary Judgment

#### 1. The Plaintiff's Wrongful Termination Claim is Time-Barred[1]

WMATA contends that the applicable statute of limitations period for the plaintiff's wrongful termination claim is 180 days. The plaintiff does not dispute that applicability of the 180-day statute of limitations, but argues that the court should entertain his claim notwithstanding the fact that he filed it close to one and a half years after it occurred. Pl.'s Opp'n at 2.[2]

---

[1] Alternatively, Washington Metropolitan Area Transit Authority ("WMATA") is immune from torts relating to events that took place in the performance of a governmental (as opposed to a proprietary) function, D.C. Official Code § 9-1107.01(80), including hiring and firing decisions. *Beebe v. Wash. Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C. Cir. 1997); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997).

[2] Because the plaintiff does not dispute WMATA's contention that the applicable statute of limitations governing the plaintiff's wrongful termination claim is 180 days, the court interprets the plaintiff's silence on this point as conceding it. LCvR 7(h). Furthermore, there is sufficient precedent to persuade the court that the 180-day statute of limitations should be borrowed from the NLRA for actions against WMATA that allege both WMATA's breach of the collective bargaining agreement ("CBA") and breach of the Amalgamated Transit Union's ("Local 689" or the "Union") duty of fair representation ("DFR"). *See Smith v. Wash. Metro. Area Transit Auth., et al.*, C.A. No. 92-419 (D.D.C. Jul. 15, 1992) (Jackson, J.) (holding in an alternative ruling that six-month statute of limitations applies to retaliatory discharge claim); *Barnes v. Wash. Metro. Area Transit Auth., et al.*, C.A. No. 79-1776 (D.D.C. Dec. 12, 1979) (Richey, J.); *Martin v. Wash. Metro. Area Transit Auth., et al.*, C.A. No. 93-2201 (D.D.C. Nov. 29, 1994) (Green, J.) (borrowing the NLRA's 180-day statute of limitations for hybrid claims against WMATA); *but cf. Butler v. Wash. Metro. Area Transit Auth.*, 1990 U.S. Dist. LEXIS 10631 (D.D.C. Aug. 10, 1990) (applying the District of Columbia's three-year statute of limitations for a wrongful termination claim against WMATA).

                i.    **Applicable Statute of Limitations**

WMATA contends that the court should treat the plaintiff's wrongful termination claim as a hybrid breach of contract–breach of duty of fair representation claim. Def.'s Mot. at 13-14 (incorporating by reference Def. Local 689's Mot. for Summ. J. at 6-7).

Although the plaintiff's complaint does not mention the collective bargaining agreement ("CBA") between Local 689 (as the employees' representative) and WMATA, the wrongful termination claim is necessarily predicated on the terms of the CBA. The plaintiff's wrongful termination claim is premised on WMATA's obligation not to discharge the plaintiff without sufficient cause.[3] The plaintiff alleges that WMATA "failed to articulate a reasonable, and verifiable reason for terminating the Plaintiff," that it "refused to provide [the plaintiff] with a detailed explanation for its decision to terminate his employment," and that WMATA based its termination of the plaintiff's employment on "various, unsubstantiated customer complaints, without due regard for his exemplary service and commendations." Am. Compl. ¶¶ 54-56.

The right not to be terminated without sufficient cause is not one that exists for all employees, regardless of the terms of their employment. *Liberatore v. Melville Corp.*, *T/A CVS*, 168 F.3d 1326, 1329 (D.C. Cir. 1999) (identifying narrow public policy exception to the principle that "[a]n employee who serves at the will of his or her employer may be discharged at any time and for any reason, or for no reason at all" (citations and quotations omitted)). Under the CBA, the plaintiff had the right to be discharged only for "a reasonable, and verifiable

---

       3        Section 104(d) of the CBA states that an employee "will not be discharged, suspended, or otherwise disciplined, nor will entries be made against the employee's service record without sufficient cause." Def.'s Mot., Ex. B (CBA § 104(d)).

reason." Without the CBA, WMATA could terminate the plaintiff's employment without providing any explanation. *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 324 (1972) (stating that "the very concept of 'wrongful discharge' implies some sort of statutory or contractual standard that modifies the traditional common-law rule that a contract of employment is terminable by either party at will"). For this reason, the plaintiff's complaint is necessarily based on the terms of the CBA. Accordingly, the court treats his wrongful termination claim as alleging breach of the CBA.

The court in *DelCostello v. Int'l Brotherhood of Teamsters*, discussed hybrid breach of CBA-breach of duty of fair representation ("DFR") claims. 462 U.S. 151 (1983). Given the firmly established tenet that disputes governed by CBAs should generally be resolved through union mechanisms, rather than through litigation, the *DelCostello* court held that any employee claiming breach of the CBA by his or her employer without first exhausting all administrative remedies must also demonstrate breach of the DFR by his or her union. *DelCostello*, 462 U.S. at 165. "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id.*

The *DelCostello* court held that the applicable statute of limitations for hybrid breach of CBA/breach of DFR claims is 180 days, borrowed from section 10(b) of the National Labor Relations Act ("NLRA") (codified at 29 U.S.C.§ 160(b) (180-day statute of limitations under the NLRA)). 462 U.S. at 164. Because the court treats the plaintiff's allegation of wrongful termination as a hybrid breach of CBA-breach of DFR claim, the 180-day statute of limitations

applies.[4]  Here, the plaintiff's termination letter is dated May 8, 2002, and his employment relationship with WMATA terminated on June 1, 2002; therefore, his 180-day window to bring suit had long passed by the time he actually filed suit on September 15, 2003.

### ii.  Equitable Tolling

The plaintiff claims that equitable tolling should be applied in this case because WMATA engaged in "affirmative misconduct" by "acting to preclude Mr. Dove from pursuing his administrative remedies[.]"  Pl.'s Opp'n at 4.  The frequently conflated doctrines of equitable tolling and equitable estoppel are the two primary ways for a court to toll a statute of limitations for a plaintiff who failed, through no fault of his or her own, to file suit within the statutory period.

Whereas equitable estoppel "precludes a defendant, because of his own inequitable conduct – such as promising not to raise the statute of limitations defense – from invoking the statute of limitations[,]" equitable tolling applies when a "plaintiff, despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim." *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 278 (D.C. Cir. 2003) (citing *Currier v. Radio Free Europe*, 159 F.3d 1362, 1367 (D.C. Cir. 1998)).

The plaintiff relies on *Washington v. Washington Metropolitan Area Transit Authority*,

---

[4]  Because the court dismisses the plaintiff's wrongful termination claim on statute of limitations grounds, it need not address the plaintiff's assertion that "[b]ecause WMATA affirmatively acted to obstruct Mr. Dove from exhausting his administrative remedies, WMATA should be equitably estopped from asserting failure to exhaust administrative remedies as a basis for summary judgment."  Pl.'s Opp'n at 3.  Nor need the court address WMATA's claim that, under *DelCostello*, the plaintiff's dismissal with prejudice of all of his claims against the union precludes him from asserting his wrongful termination claim against WMATA.  See Def. WMATA's Mot. for Summ. J. at 13-14.

160 F.3d 750 (D.C. Cir. 1998), to support his contention that the court should apply equitable tolling to the plaintiff's wrongful termination claim. Pl.'s Opp'n at 2. Although the *Washington* court declined to give the plaintiff the benefit of equitable tolling, it noted that the principle would properly apply where a defendant had engaged in "affirmative misconduct." 160 F.3d at 752. The plaintiff alleges that WMATA engaged in "affirmative misconduct" by allegedly forcing the plaintiff to decide between retiring and being terminated. Pl.'s Opp'n at 2. On this basis, he argues that the court should apply equitable tolling. *Id.*

The "affirmative misconduct" language used in *Washington* is derived from *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984), which held that "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." 466 U.S. at 151 (stating that "this is not a case in which a claimant has received inadequate notice . . . or where the court has led the plaintiff to believe that she had done everything required of her . . . nor is this a case where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction"). The plaintiff presented no argument suggesting that the defendant intentionally misled the plaintiff. Absent such a showing, the plaintiff's claim fails. *See Villasenor v. Lockheed Aircraft Corp.*, 640 F.2d 207, 207-08 (9th Cir. 1981); *Wilkerson v. Siegfried Insurance Agency, Inc.*, 621 F.2d 1042, 1045 (10th Cir. 1980); *Leake v. Univ. of Cincinatti*, 605 F.2d 255, 259 (6th Cir. 1979). In addition, numerous other cases addressing claims for equitable tolling and equitable estoppel emphasize that the core purpose of both doctrines is to prevent a plaintiff from being disadvantaged by the expiration of the limitations period when it ran through no fault of his or her own. *See, e.g.*, *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946); *United States v. Baylor*, 2005 U.S. App. LEXIS 8114, *4-5; Currier*, 159 F.3d at 1367.

The plaintiff fails to allege that, despite due diligence, he was unable to bring suit within the statutory period. Nor does he allege any misleading action by WMATA preventing him from filing suit before the statute of limitations ran. As such, the plaintiff's arguments fail. For the foregoing reasons, the court rejects the plaintiff's request for equitable tolling and grants the defendant's motion for summary judgment as to his claim of wrongful termination.

### 2.    The Plaintiff's Defamation/Libel Claim is Time-Barred

The statute of limitations for libel claims in the District of Columbia is one year. D.C. Official Code § 12-301(4). This statute of limitations has been held to apply to defamation claims as well. *Mittleman v. United States*, 997 F. Supp. 1, 12 (D.D.C. 1998). The plaintiff's defamation/libel claim concerns remarks that were "published into written complaints and posted onto plaintiff's permanent employment record"; therefore, even being generous to the plaintiff, the latest date that the statute of limitations could have stared running was May 31, 2002, the last day of the plaintiff's employment with WMATA. Am. Compl. ¶ 62. Accordingly, the plaintiff must have filed his action by no later than May 30, 2003.[5] Because he did not file the instant action until September 15, 2003, his claim is time-barred. For this reason, the court grants the defendant's motion for summary judgment as to the plaintiff's claim of defamation/libel.

---

[5] *See Butler v. Wash. Metro. Area Transit Auth.*, 1990 U.S. Dist. LEXIS 10631, *5-6 (D.D.C. Aug. 10, 1990) (holding that because "the [three-year] statute of limitations began to run on June 6, 1986 . . . the plaintiff had until June 5, 1989 to file suit[,]" and dismissing the action because the plaintiff filed suit on June 6, 1989.)

### 3. The Plaintiff's Unfair Labor Practices Claim is Time-Barred[6]

The plaintiff asserts that WMATA engaged in unfair labor practices by allegedly "refusing to sign the necessary paperwork in order for the [plaintiff's May 10, 2002] grievance to proceed through the proper channels." Am. Compl. ¶ 91. Section 7(a) of the NLRA prohibits unfair labor practices by an employer. 29 U.S.C. § 158(a). The statute of limitations for claims brought under the NLRA, however, is 180 days. *See* discussion *supra* Part III.B.1. Because the plaintiff did not file the instant action within this period, his claim is time-barred.

### 4. The Plaintiff's Conspiracy Claim Lacks an Underlying Tortious Act

Conspiracy is not an independent cause of action in the District of Columbia. *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983) (citing *Waldon v. Covington*, 415 A.2d 1070, 1074 n.14 (D.C. 1980)). As such, "liability for civil conspiracy depends on performance of some underlying tortious act." *Id.* Because the court has granted summary judgment as to all of the plaintiff's other claims against WMATA, the court finds no tortious act to serve as a predicate for the plaintiff's conspiracy claim. For this reason, the court grants the defendant's motion for summary judgment as to the plaintiff's claim of conspiracy.

---

[6] The court notes that summary judgment as to the plaintiff's claim of unfair labor practices is proper not only because the claim is time-barred, but also because WMATA is not an "employer" within the meaning of the NLRA. *See* 29 U.S.C. § 152 (2) (stating, "[t]he term 'employer'. . . shall not include . . . any State or political subdivision thereof";) *see also* Wash. Metro. Area Transit Auth. Compact, § 3, D.C. Official Code § 9-1107.01(3) (stating that WMATA is a political subdivision of Virginia and Maryland); *Diven v. Amalgamated Transit Union Int'l & Local 689, Amalgamated Transit Union*, 38 F.3d 598, 601 (D.C. Cir. 1994) (holding that WMATA is not an "employer" within the meaning of 29 U.S.C. § 152(2)).

## IV. CONCLUSION

For all the foregoing reasons, the court grants the defendant WMATA's motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 29th day of July 2005.

                                                    RICARDO M. URBINA
                                                    United States District Judge